IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN MAURICE ROBINSON, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 20-1363 |
| KILOLO KIJAKAZI,[1] | : | |
| Acting Commissioner of Social Security | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                           November 22, 2021

This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied the application of Shawn Maurice Robinson ("Robinson") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act"). Presently before the Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br.") (Doc. 18); Defendant's Response to Plaintiff's Request for Review ("Def. Br.") (Doc. 23); Plaintiff's Reply Brief (Doc. 24); and the record of the proceedings before the Administrative Law Judge ("ALJ") (Doc. 17) (hereinafter "R."). Plaintiff asks the Court to reverse the decision of the ALJ and to remand the matter to the Commissioner for a calculation of benefits. The Commissioner seeks the entry of an order affirming the decision of the ALJ. For the reasons set forth below, we grant the request for review and remand for further consideration.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.   FACTUAL AND PROCEDURAL HISTORY**

Robinson filed his claim for SSI on October 18, 2016, alleging disability beginning on May 1, 2010. He had a limited education and remote work history as a janitor. He was 38 years old when he applied for benefits. In his application materials, he identified the residuals of a brain aneurysm as the basis for his disability. He experienced the aneurysm in April 2010 and was hospitalized for 3 months thereafter.

The state agency denied his claim on April 19, 2017, and Robinson requested a hearing with an ALJ. Robinson, who was represented by counsel, testified at the August 15, 2018 hearing that since his hemorrhage, he has used a cane to stand or walk and that he tends to list to the side. He reported that he has double vision and poor coordination. He testified that his hands also lock up on him and that he has difficulty concentrating and trouble with his speech. An impartial vocational expert ("VE") also testified at the hearing, addressing the vocational implications of various limitations described in hypothetical questions posed by the ALJ.

On November 15, 2018, the ALJ issued a written decision regarding Robinson's application. She found that he had not been disabled at any time since the date of his December 22, 2016 application in that he could perform a limited range of light work if provided the opportunity to sit and stand at will. (R. 20.) Robinson asked the Appeals Council to review the decision, but on January 9, 2020 that body determined that there was no reason to set aside the ALJ's decision, rendering it the final decision of the Commissioner. This litigation followed.

**II.   STANDARD OF REVIEW**

This Court must determine whether the ALJ's conclusion that Robinson could perform jobs that exist in sufficient numbers in the national economy is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F. 3d 546, 552 (3d Cir. 2005). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *See also Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C § 405(g); *Rutherford*, 39 F.3d at 552). The review of legal questions presented by the Commissioner's decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

### III.    DECISION UNDER REVIEW

The issue before the ALJ at the time of the November 15, 2018 decision under review was whether Robinson had been disabled within the meaning of the Act at any time since December 22, 2016, the date on which he filed his application for SSI. The ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a) to reach her conclusion. At Step One, she found that Robinson had not engaged in substantial gainful activity since the alleged onset date. (R. 17, Finding No. 1.) At Step Two, she found that Robinson suffered from severe, medically-determinable impairments, specifically "status post intracranial hemorrhage with double vision." (R. 17, Finding No. 2.) At Step Three, she concluded that Robinson did not have an impairment or combination of impairments that satisfied the criteria of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (R. 19, Finding No. 3.) Plaintiff does not contest any of those findings.

The ALJ then considered Robinson's residual functional capacity ("RFC"), which is defined as "the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ determined:

> **4.** After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he must never climb ladders, scaffolds, or stairs. He is unable to avoid ordinary hazards in the work place such as boxes on the floor, doors ajar, or approaching people or vehicles. He is unable to read very small or book print or read a computer screen. He must never be exposed to unprotected heights. He must never work with moving mechanical parts or operate a motor vehicle. He requires the ability to sit and stand at will.

(R. 20, Finding No. 4.) As Robinson had no employment history that qualified as past relevant work against which to compare his current RFC, the ALJ moved past Step Four and proceeded to Step Five, at which she was to assess whether Robinson was capable of performing any jobs that exist in significant numbers in the national economy considering his age (as a "younger individual" as of his application date), his limited education, his capable English language skills, and his RFC. At the hearing, the VE testified that there were jobs that an individual with the above RFC could perform, such as garment sorter, electrode cleaner, and casing packers. (R. 25.) Citing to this testimony, the ALJ concluded that Robinson was capable of performing jobs that existed in significant numbers in the national economy and thus was not disabled. (R. 24-25, Finding Nos. 9-10.)

## IV. DISCUSSION

Robinson contends that the ALJ's dispositive finding at Step Five was based upon a number of unresolved vocational conflicts. He also contends that based upon the vocational implications of the ALJ's own finding as to RFC, Robinson would not have been able to perform the jobs identified by the VE. Alternatively, he contends that the ALJ's decision must be vacated where she allegedly substituted her lay judgment for that of opinions of expert medical sources as to the implications of Robinson's need for a cane and the extent to which pain and other symptoms interfered with the attention and concentration necessary to perform even simple work.

We begin with the issues concerning the ALJ's Step Five determination that purported to rely on the VE testimony. We find that the question concerning the VE evidence provides a clear basis to vacate the ALJ's decision.[2]

### A.     Reliance upon VE testimony

In the first argument Plaintiff sets forth in his brief in support of reversal, he contends that the ALJ's decision is inconsistent with the Commissioner's regulatory policies or definitions concerning vocational evidence. He contends that the VE's testimony in his case – that an individual with the limitations described in the ALJ's RFC finding could perform three particular jobs – is inconsistent with the Dictionary of Occupational Titles (the "DOT"). He argues that the ALJ failed to resolve these evidentiary conflicts, leaving the Step Five decision not supported by substantial evidence. (Pl. Br. at 3.) We agree that these are fatal defects.

Social Security Ruling 00-4p states the Commissioner's policy on the subject of "Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions." It provides, in relevant part, that:

> In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy. We use these publications at steps 4 and 5 of the sequential evaluation process. We may also use VEs and VSs at these steps to resolve complex vocational issues.[FN omitted.] …
>
> Resolving Conflicts in Occupational Information
>
> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. *When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.* At the hearings level, as part of the adjudicator's duty to

---

[2] In the interest of judicial economy, we will not address the other issues raised in Plaintiff's brief.

> fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p (emphasis added). The ruling goes on to explain that neither the DOT evidence nor the VE testimony "automatically 'trumps' when there is a conflict." *Id.* Rather, the adjudicator must take the explanation for the conflict given by the VE and determine if it is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. *Id.* If it were not already clear from the above-quoted language, the ruling continues with this explicit instruction:

> The Responsibility To Ask About Conflicts
>
> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.
>
> Explaining the Resolution
>
> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

*Id.*

Plaintiff argues that there is an unresolved conflict between the DOT descriptions of "garment sorter" and "electrode cleaner" and the VE's testimony that someone who was unable to

read very small print – as stated in the ALJ's hypothetical question – could perform those occupations. The Commissioner asserts that the obligation to reconcile an unresolved conflict applies only when there is an "apparent unresolved conflict between VE evidence and the DOT" and argues that no apparent conflict existed in this case. The Commissioner characterizes Plaintiff's argument as asking the Court "to assume that the ALJ fully credited his allegations of disabling blurred vision" and accept that he would not be able to read garment labels or be able to clean small electrode parts. (Def. Br. at 10.) In an apparent effort to bolster Plaintiff's visual capacity, the Commissioner points to a reference in the ALJ's decision to Robinson having read a lot during an earlier period of incarceration and that he was good at various activities, including carpentry. (*Id.*) But the Commissioner ignores the fact that in her RFC finding – the numbered paragraph of her decision – the ALJ specifically referenced a vision limitation:

> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he must never climb ladders, scaffolds, or stairs. He is unable to avoid ordinary hazards in the work place such as boxes on the floor, doors ajar, or approaching people or vehicles. *He is unable to read very small or book print or read a computer screen.* He must never be exposed to unprotected heights. He must never work with moving mechanical parts or operate a motor vehicle. He requires the ability to sit and stand at will.

(R. 20, Finding No. 4 (bold removed; italics added).) Therefore, we are not being asked to usurp the role of the ALJ to find facts concerning Robinson's vision impairment but rather to ensure that the VE's testimony comports with the RFC finding and the vocational authorities.

As Plaintiff points out, DOT § 222.687-014, which describes the occupation of garment sorter, requires sorting by lot and size numbers recorded on tags and labels affixed to articles of clothing. (Pl. Reply at 3.)[3] We agree that "the visual limitations adopted by the ALJ herself would

---

[3] The DOT definition provides:

prevent Mr. Robinson from performing the occupation of garment sorter." (*Id.*)  The same is true for the ALJ's finding concerning the occupation of electrode cleaner, which requires scraping encrusted debris from the surfaces of small pieces of electronic equipment.  *See* DOT § 729.687-014.[4]  The DOT definition creates an apparent conflict with the VE's testimony that a hypothetical individual who is "unable to read very small print or book print" could perform this work.  This conflict required further questioning of the VE by the ALJ.

We note here also that the Commissioner conceded that Robinson could not perform the third job identified by the ALJ – as a casing packer – "[t]o the extent that the … job involves moving machinery" (Def. Br. at 10 n.2) – which it does.  *See* DOT § 525.686-010.  And again, work involving "moving mechanical parts" was explicitly recognized by the ALJ in her RFC finding as work that Robinson "must never" do.  (R. 20.)  The Commissioner argues that this is harmless error that does not warrant a remand inasmuch as the VE identified other jobs.  *See* Def.

---

> 222.687-014 GARMENT SORTER (garment)
>
> Sorts finished garments, such as shirts, dresses, and pajamas, according to lot and size numbers recorded on tags and labels attached to garments. May fold and package garments in boxes and bags. May iron garments prior to folding [PRESSER, HAND (any industry)]. May be designated according to garment sorted as Shirt Sorter (garment).
> GOE: 06.03.02 STRENGTH: L GED: R2 M2 L1 SVP: 2 DLU: 77

[4] The DOT definition provides:

> 729.687-014 ELECTRODE CLEANER (elec. equip.)
>
> Scrapes surface of graphitized electrodes to loosen particles of coke or encrusted insulating mixture, using scraping tool. Wipes loose material from electrode, using steel wool, and places electrodes into cart for inspection.
> GOE: 06.04.39 STRENGTH: L GED: R1 M1 L1 SVP: 1 DLU: 77

Br. at 10 n.2. But again, the other jobs identified were problematic because of these unresolved conflicts of the VE's testimony with the DOT. There is no way that the ALJ's Step Five finding can be salvaged on this record. Plaintiff must be given a new hearing.

## V.     CONCLUSION

Where the ALJ found Robinson not disabled at Step Five, she was required to carry her burden of proof that there were other jobs in the economy that Robinson could perform. Inasmuch as she relied on VE testimony that conflicts with the DOT, and she did not resolve that conflict, the ALJ did not have the requisite support for her Step Five finding. The ALJ's decision must be vacated and the matter remanded to the Commissioner for a new decision.

An appropriate order will follow.

BY THE COURT:

/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE
